IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: AIO US, INC., et al., | ) | Chapter 11 |
| | ) | Case No. 24-11836 (CTG) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, et al., | ) | |
| | ) | |
| | ) | |
| Appellants, | ) | C.A. No. 25-1245 (MN) |
| v. | ) | |
| | ) | |
| AIO US, INC., et al., | ) | |
| | ) | |
| Appellee. | ) | |

# MEMORANDUM OPINION

Russell W. Roten, Jeff D. Kahane, Nathan Reinhardt, Timothy W. Evanston, Ashley Storey, SKARZYNSKI MARICK & BLACK LLP, Los Angeles, CA; Sommer L. Ross, DUANE MORRIS LLP, Wilmington, DE—Counsel to appellants, Certain Underwriters at Lloyds, London, et al.

Adam C. Silverstein, OTTERBOURG, P.C., New York, NY; Marla R. Eskin, Katherine L. Hemming, CAMPBELL & LEVINE, LLC, Wilmington, DE—Counsel to appellee, Avon Liquidation Trust

Kevin C. Maclay, Todd E. Phillips, Kevin M. Davis, CAPLIN & DRYSDALE, CHARTERED, Washington, DC; Mark T. Hurford, A.M. SACCULLO LEGAL, LLC, Bear, DE—Counsel to appellee, the Trust Advisory Committee for the Avon Liquidation Trust

September 25, 2026
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

This appeal arises in the chapter 11 cases of liquidating debtor AIO US, Inc. and certain affiliates (together, "the Debtors"). Certain insurers ("Appellants")[1] have appealed the Bankruptcy Court's order, entered September 24, 2025 (Bankr. D.I. 1550)[2] ("the Confirmation Order") confirming the Debtors' Fourth Amended Joint Chapter 11 Plan of Liquidation (Bankr. D.I. 1550-1) (A0015-124) ("the Plan") which contained a provision enjoining state law contribution claims between non-debtor insurers (A0094-95) (Plan, §§ 10.5(ii), (ii)(a)) ("the Insurance Entity Injunction"). Appellants, who filed their appeal one day after the Plan's effective date, assert several arguments as to why the Confirmation Order should be reversed or modified, including that the Bankruptcy Court lacked jurisdiction to enjoin the contribution claims and erred when it permitted temporarily allowed but unfiled talc liability claims to vote on the Plan. Appellants have further sought a stay of certain state court proceedings pending a decision in this appeal (D.I. 27, 28) ("the Motion to Stay"). All of this relief is opposed by the Avon Liquidating Trust ("the Trust"), which was established pursuant to the Plan, and the Trust's Advisory Committee (together, "the

---

1 Appellants are Certain Underwriters at Lloyds, London, Tenecom Limited, f/k/a The Yasuda Fire & Marine Ins. Co. of Europe, Ltd., Tenecom Limited, f/k/a Winterthur Swiss Insurance Company, Cavello Bay Reinsurance Limited (as successor in interest to; i) Brittany Insurance Company Limited; and ii) Harper Insurance Limited (fka Turegum Insurance Company), River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, which was in turn successor in interest to certain business of St Katherine Insurance Company Limited), and Accredited Insurance Europe Limited (as successor in interest to Ancon (UK) Insurance Company Limited), Wellfleet New York Insurance Company, formerly known as Atlanta International Insurance Company, as successor to Drake Insurance Company of New York ("AIIC"); AIG affiliated underwriting companies including Lexington Insurance Company, AIU Insurance Company, and Granite State Insurance Company; and Starr Indemnity & Liability Company, as successor in interest to Republic Insurance Company. (D.I. 25 at i-ii.)

2 The docket of the chapter 11 cases, captioned *In re AIO US, Inc.*, No. 24-11836 (CTG) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __." The appendix (D.I. 26) filed in support of Appellants' opening brief is cited herein as "A__," and the appendix (D.I. 29) filed in support of Appellants' Motion to Stay is cited herein as "SA__."

Appellees"). For the reasons set forth herein, the Confirmation Order will be affirmed and the Motion to Stay will be denied as moot.

# I. BACKGROUND

## A. The Chapter 11 Cases

The Debtors were equity holding companies for a variety of non-debtor subsidiaries involved in the manufacture and sale of beauty and cosmetics products. (A0330-31). The Debtors sold their North American business lines in 2016 but retained certain liabilities – including substantial legacy liabilities relating to talc and talc-containing products ("the Talc Claims," and the holders of such Talc Claims, "the Talc Claimants") (A0332). Faced with "pressing liquidity challenges" from the "significant and increasing liabilities arising from the Talc Claims," the Debtors filed voluntary chapter 11 petitions on August 12, 2024. (A0300, A0332). Following months of negotiation and litigation with various constituencies, the chapter 11 cases culminated in the Plan, which was confirmed over numerous objections from insurers, including Appellants. (*See* A0885-A1041). The form of order confirming the plan was negotiated among the Debtors, the unsecured creditors' committee, and objecting insurers, including Appellants. Appellants are the only objecting insurers to have appealed.

## B. The Plan's Insurance Entity Injunction

Relevant to this Appeal, the Plan assigns rights under certain insurance policies to the Trust and authorizes the Trust to pursue those rights for the benefit of creditors, including the right to settle insurance disputes under policies with relevant insurers. (Plan §§ 5.4(ii), (iv) (A0067-68)). For example, the Plan permits the Trust to settle insurance disputes through a "buyback" – *i.e.*, by selling an underlying Insurance Policy back to the relevant Settling Insurer under section 363 of the Bankruptcy Code. (*Id.* at § 9.1(x)(f) (A0090-91)). Under the Plan, the Bankruptcy Court retains jurisdiction to approve such settlements and to issue injunctive relief in support of the settlement

and buy-back. (*Id*. at § 11.1(c) (A0101)). To facilitate these settlements, § 10.5 of the Plan includes the Insurance Entity Injunction, which prohibits any entity, including Non-Settling Insurers, from pursuing a Settling Insurer for a cause of action based on or arising from any of the Insurance Policies bought out under the Plan. (*Id*. at § 10.5 (A0094-97)). Such claims would include a Non-Settling Insurer's claim for contribution against a Settling Insurer that might arise if a court entered a judgment requiring a Non-Settling Insurer to pay more than its share of liability for Talc Claims (such claim, a "Contribution Claim").

To prevent unfairness resulting from any such judgment, the Plan contains a "Judgment Reduction for Insurer Contribution Claims Against Settling Insurers" provision, which requires the Trust to reduce its own judgment against any Non-Settling Insurer by the amount of the otherwise barred Contribution Claim, thereby providing the Non-Settling Insurer with compensation for the full value of its relevant Contribution Claim. (*Id*. at § 10.5(iii)(g) (A0096-97)). And if there is no judgment in favor of the Trust against the Non-Settling Insurer that can be reduced, the same provision requires the Trust to pay the Contribution Claim to the Non-Settling Insurer in accordance with the Trust Distribution Procedures. (*Id.*). These Plan provisions are practically identical to those approved by the Third Circuit in *In re Boy Scouts of Am.,* 137 F.4th 126, 167 (3d Cir. 2025) ("*BSA*"), *cert. denied sub nom. Lujan Claimants v. Boy Scouts of Am.*, 146 S. Ct. 1438 (2026).[3]

Relevant to this appeal, however, the Debtors assert, and the Bankruptcy Court has expressly determined, that Appellants failed to object to the Insurance Entity Injunction specifically, or § 10.5

---

[3] *Compare In re Boy Scouts of Am.*, Case No. 20-10343-LSS (Bankr. D. Del. July 7, 2025), D.I. 12966, at 2-3 (*Order, Pursuant to May 13, 2025 Decision of the U.S. Court of Appeals for the Third Circuit, Modifying Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC*), *with* Plan § 10.5(iii)(g) (A0096-97)).

of the Plan generally, in the bankruptcy proceedings. *See In re AIO US, Inc.,* 2025 WL 3036740, at *4 (Bankr. D. Del. Oct. 30, 2025).

**C. Appellants' Solicitation Procedures Objection**

One objection Appellants raised to the Plan and its solicitation procedures was that the Talc Claimants were permitted to vote on the plan without filing proofs of claim. (A1048). In a Memorandum Opinion issued June 6, 2025, the Bankruptcy Court overruled Appellants' objection on multiple grounds and approved the solicitation procedures. *See In re AIO US, Inc.*, 672 B.R. 261, 277 (Bankr. D. Del. 2025) ("The judgment that proofs of claim are unnecessary in a mass tort case in which claims allowance will be handled on a post-confirmation basis is common in mass tort bankruptcy cases"). The Bankruptcy Court therefore temporarily allowed Talc Claims at fixed values solely for the purposes of allowing Talc Claimants to vote pursuant to Bankruptcy Rule 3018(a)(4).[4] The Bankruptcy Court determined that the proposed ballots, in light of the changes that had been made in response to other objections, provided the principal protections that would otherwise be afforded by the filing of proofs of claim. *See id.* at 278. Creditors overwhelmingly voted in favor of that Plan, including 100% of the 414 voting Talc Claimants. (Bankr. D.I. 1221).

**D. The Confirmation Order and Appeal**

On July 21 and July 23, 2025, the Bankruptcy Court held a two-day confirmation hearing. (A2197-2643). On August 21, 2025, the Court issued a Memorandum Opinion that largely overruled the various objections interposed by the objecting parties but noted that certain of the objections would require modifications to the plan. *In re AIO US, Inc.*, 677 B.R. 509 (Bankr. D. Del. 2025) ("the August Memorandum Opinion"). Thereafter, the parties negotiated changes

---

[4] "Even if an objection to a claim or interest has been filed, the court may, after notice and a hearing, temporarily allow a claim or interest in an amount that the court considers proper for voting to accept or reject a plan." Fed. R. Bankr. P. 3018(a)(4).

necessary to conform the Plan to the Bankruptcy Court's decision. On September 22, 2025, the Bankruptcy Court held a further hearing to approve those changes. (A2644-89). On September 24, 2025, the Bankruptcy Court issued the Confirmation Order. (Bankr. D.I. 1550).

Bankruptcy Rule 3020 provides that an order confirming a plan is automatically stayed for 14 days after its entry unless the court orders otherwise. Fed. R. Bankr. P. 3020(e). In its August Memorandum Opinion, the Bankruptcy Court explained that the 14-day stay gives an objecting party a reasonable opportunity to seek a stay pending appeal and that it would only waive the 14-day stay if no party in interest represented to the court that it intended to seek a stay pending appeal. At the hearing on the changes, the court asked counsel to Appellants whether they intended to seek a stay pending appeal, and counsel demurred. (*See* A2684-85). Accordingly, the Confirmation Order waived the 14-day stay. Notwithstanding that waiver, which would have permitted the Plan to become effective immediately upon the entry of the Confirmation Order, the Plan did not become effective until October 7, 2025 – 13 days later. (Bankr. D.I. 1577).

The day after the Plan's effective date, on October 8, 2025, Appellants filed their Notice of Appeal, together with a motion a stay seeking a stay of the Confirmation Order pending the appeal. (Bankr. D.I. 1585, 1587). The stay motion was denied by the Bankruptcy Court for the reasons set forth in its Memorandum Opinion dated October 30, 2025, *In re AIO US, Inc.*, 2025 WL 3036740 (Bankr. D. Del. Oct. 30, 2025) ("the October Memorandum Opinion").

On November 18, 2025, this Court issued an order setting a briefing schedule on the merits of the appeal. On January 14, 2026, Appellants filed their Motion to Stay a state court coverage action pending in the Superior Court for the State of Delaware ("the Delaware State Court Action")[5] pending a decision on this appeal. The Motion to Stay is fully briefed. (D.I. 28, 34, 37). The merits

[5] *Avon Liquidation Trust v. Accredited Insurance (Europe) Ltd. et. al*, No. N25C-10-064 SKR CCLD (Del. Super. Ct.)

of the appeal are also fully briefed. (D.I. 25, 39, 41). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). An order confirming a chapter 11 plan is a final order. *In re Nikola Corp.,* 2026 WL 2655169, at *3 (D. Del. Sept. 9, 2026). This Court "reviews the bankruptcy court's legal determinations de novo, its factual findings for clear error, and its discretionary decisions for abuse of discretion." *In re Somerset Reg'l Water Res., LLC*, 949 F.3d 837, 844 (3d Cir. 2020) (internal quotations omitted). Mixed questions of law and fact receive a "mixed standard of review, affording a clearly erroneous standard to integral facts, but exercising plenary review of the lower court's interpretation and application of those facts to legal precepts." *In re Tribune Media Co.*, 587 B.R. 606, 612 (D. Del. 2018) (quoting *In re Exide Techs.*, 607 F.3d 957, 962 (3d Cir. 2010)). The questions presented by Appellants are legal determinations subject to *de novo* review, but where these legal determinations depend upon underlying facts, such factual findings are assumed correct unless shown to be clearly erroneous. *Id.*

## III. ANALYSIS

### A. The Bankruptcy Court Did Not Err in Approving the Insurance Entity Injunction

Appellants argue that the Bankruptcy Court erred in confirming the Plan because the Insurance Entity Injunction set forth in § 10.5 of the Plan cuts off inter-insurer contribution claims, which Appellants argue is a form of non-consensual third-party release prohibited by the Supreme Court's decision in *Harrington v. Purdue Pharma, L.P.,* 603 U.S. 204 (2024). As the Bankruptcy Court explained in its October Memorandum Opinion, "[i]t is true that outside of bankruptcy, there are circumstances in which multiple insurers may have potential responsibility for the same claim.

If one insurer settles for an amount that pays less than its fair share of the potential claim, the non-settling insurer may be forced to bear more than its share of the liability to the insured. *In re AIO US, Inc.*, 2025 WL 3036740, at *3. "And in those circumstances, the non-settling insurer may have claims against the settling insurer, for contribution or otherwise." *Id*. (citing *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 215 (1994)). "In its recent decision in *Boy Scouts*, the Third Circuit held that the manner in which the plan addressed such claims improperly prejudiced the non-settling insurer and required revisions to the confirmation order to remedy that defect." *Id.* (citing *BSA*, 137 F.4th at 168-69).

In *BSA*, the Third Circuit observed, after the Supreme Court's decision in *Purdue*, that a plan provision which offsets non-settling insurer liability to the trust to the extent that such insurers would otherwise be entitled to a Contribution Claim will, absent a scenario wholly inapplicable here, generally leave the non-settling insurer fully satisfied. *See id*. The Third Circuit went on to conclude that this arrangement "will pose no problem" under *Purdue* because the Supreme Court did not consider plans that "provide[] for the full satisfaction of claims against a third-party nondebtor." *Id*. (quoting *Purdue*, 603 U.S. at 226). The Third Circuit nevertheless found that the injunction contained in the *BSA* plan required modification under *Purdue* because there the plan's setoff provision did not account for the scenario where a claimant could opt-out to the tort system. *See id.* at 168. The parties had not developed an adequate factual record to support the proposition that the reduction of other obligations of Non-Settling Insurers under the Plan compensated them for the loss of their contribution claims in this tort system scenario, and accordingly, the Third Circuit could not find that the appealing insurers would be fully compensated. *See id.* at 169.

The Plan here does *not* allow tort claimants to bring their claims in the tort system. Thus, Appellees assert, the hypothetical scenario in *BSA* that led the Third Circuit to conclude, on that existing record, that the judgment reduction clause there was insufficient under *Purdue* is

inapplicable here. (D.I. 39 at 19). But "[r]egardless, in an abundance of caution, the Plan here *already* contains the language that the Third Circuit found was needed in *BSA* to satisfy *Purdue*." (*Id.*).[6] "Indeed," Appellees assert, this Plan was *designed* to follow the Third Circuit's opinion in *BSA* to foreclose this very basis for challenging the Confirmation Order." (*Id.*).

According to Appellants, this argument misses the mark. *Purdue* states that the Bankruptcy Code "does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." *Purdue,* 603 U.S. at 226-27. Appellants contend that the Third Circuit only approved judgment injunction language because the objecting insurers in *BSA* proposed that language in their appellate briefs. (*See* D.I. 41 at 12). *BSA*, 137 F.4th at 169 ("[W]e will reverse the District Court's judgment as to the [insurers'] claims and modify the judgment reduction clause to impose a Settlement Trust backstop as set out in Exhibit A of the [insurers'] Opening Brief."). Appellants assert that "[t]he Third Circuit approved the language in *BSA*, following *Purdue Pharma*, because the objecting insurers *proposed (i.e. consented)* to such language. The Third Circuit did not *rule* that BSA judgment reduction language satisfied *Purdue Pharma* when the affected claimants – such as Appellants – do *not* consent." (D.I. 41 at 12).

### 1. Appellants Forfeited the Argument that the Insurance Entity Injunction Violates *Purdue*

Although the parties disagree about whether the mechanism provided in the Plan complies with the Third Circuit's decision in *BSA*, Appellants' argument was never presented to the

6 *Compare In re Boy Scouts of Am.*, Case No. 20-10343-LSS (Bankr. D. Del. July 7, 2025), D.I. 12966, at 2-3 (*Order, Pursuant to May 13, 2025 Decision of the U.S. Court of Appeals for the Third Circuit, Modifying Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC*), *with* Plan § 10.5(iii)(g) (A0096-97)).

Bankruptcy Court. *In re AIO US, Inc.*, 2025 WL 3036740, at *4. It is clear from the record, including their 67-page objection to plan confirmation (A1685-1766) that Appellants did not challenge the Plan's inclusion of the Insurance Entity Injunction. *Id.* (this "argument was never presented."). Indeed, as the Bankruptcy Court found when Appellants argued that the Insurance Entity Injunction violates *Purdue* for the first time in their motion for a stay pending appeal, Appellants' confirmation objection "never even refers to § 10.5(iii)(g) of the plan" or to "any portion of § 10.5." *Id.* Where, as here, a party fails to raise an argument with a bankruptcy court, deliberately or not, it is "waived and may not be considered by the district court on appeal."[7] *In re Kaiser Grp. Int'l Inc.*, 399 F.3d 558, 565 (3d Cir. 2005).

Appellants argue that they preserved their argument that the Insurance Entity Injunction violates *Purdue*, citing to a single sentence plucked from a non-specific section of their confirmation objection that lacks any substantive development and was only made in the context of an entirely separate argument relating to "insurance neutrality." (*See* D.I. 25 at 30 (citing A1732)). Specifically, Appellants argued that the Insurance Provisions at § 5.6 of the Plan – not § 10.5 – were insufficient to preserve their rights under the insurance policies because "the Plan is riddled with findings and conflicting provisions that undercut the purported neutrality language." (A1730). To illustrate this point, Appellants observed – as merely one item in a list – that the Plan includes a provision that would "impair Insurers' contribution rights against other potentially responsible parties, including Settling Insurance Companies." (A1732). Appellants then sought a modification to the Insurance Provisions so that they would be uniquely exempt from otherwise applicable principles of res judicata and collateral estoppel. (A1729-32).

---

[7] Appellants refute "waiver" of this argument, but recent case law uses "forfeiture" for the unintentional failure to preserve an argument. *See Wood v. Milyard*, 566 U.S. 463, 470 (2012); *United States v. Dowdell*, 70 F.4th 134, 140-41 (3d Cir. 2023).

Appellants did not argue that the Insurance Entity Injunction was impermissible. Nor did they seek to limit, modify, or eliminate the Insurance Entity Injunction in any way. And a passing reference to the impairment of contribution claims is not enough to preserve the arguments they raise for the first time in this appeal. *See Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018) ("[A]rguments raised in passing . . . but not squarely argued, are considered waived.") (citation omitted)); *In re Tribune Media Co.*, 902 F.3d 384, 400 (3d Cir. 2018) (avoiding a waiver determination at the district or appellate courts requires a party to have brought the argument before the bankruptcy court); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009) (an argument is waived for purposes of appeal when the party failed to raise it with a "minimum level of thoroughness" in the lower court).

Appellants correctly point out (D.I. 5 at 31) that it is within this Court's power to consider forfeited arguments where "the public interest is better served by addressing an argument than by ignoring it and addressing that argument does not cause surprise or prejudice to the parties." *In re Imerys Talc Am.*, 38 F.4th 361, 373 (3d Cir. 2022) (internal quotations and citations omitted). This is not such a case, and *Imerys*, the primary case Appellants cite for this position, is distinguishable. In *Imerys*, the court's consideration of the forfeited argument was not prejudicial to other parties because, although the argument was not timely raised, it was fully briefed, and its merits ultimately ruled upon, by the bankruptcy court. *See id.* at 369-70, 374. Here, Appellants' concerns with § 10.5 of the Plan were not raised in the plan confirmation proceedings, or even before the Plan went effective, thus the Bankruptcy Court had no opportunity to address this issue on the merits and significant reliance interests have become intertwined with the Plan's finality. As Appellees explain, creditors voted for the Plan in reliance on the Insurance Entity Injunction's protection of the insurance assets for their sole and exclusive use. Any modification to that provision would upend their expectation to exclusive rights in the primary asset available to pay their claims.

### 2. The Bankruptcy Court Has Subject Matter Jurisdiction to Enter the Insurance Entity Injunction

Appellants argue that the Bankruptcy Court had no jurisdiction to enter the Insurance Entity Injunction because it had no jurisdiction over the contribution claims. The Court agrees that the Bankruptcy Court clearly had at least "related to" jurisdiction to enter the Insurance Entity Injunction. *In re Resorts Int'l Inc.*, 372 F.3d 154, 163 (3d Cir. 2004) ("Non-core 'related to' jurisdiction is the broadest of the potential paths to bankruptcy jurisdiction, so we need only determine whether a matter is at least 'related to' the bankruptcy" to determine whether the bankruptcy court had subject-matter jurisdiction.). "A proceeding relates to a bankruptcy case when 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *BSA*, 137 F.4th at 147 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). "Thus, the proceeding need not necessarily be against the debtor or against the debtor's property." *Pacor*, 743 F.2d at 994. "We have defined 'conceivable effect' to mean "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *BSA*, 137 F.4th at 147 (citation omitted).

A bankruptcy court may exercise jurisdiction over a post-confirmation cause of action if such cause of action shares a "close nexus" to the bankruptcy plan. *Resorts*, 372 F.3d at 165-69. A "close nexus will be found," and thus "related to" jurisdiction exists, where the post-confirmation action affects "the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement." *Id.* at 168-69. Courts in the Third Circuit have also considered whether "the interests of creditors under [a] confirmed plan" will be furthered by the Court's exercise of "related to" jurisdiction. *See In re Revel AC, Inc.*, 2016 WL 6155903, at *13 (Bankr. D.N.J. Oct. 21, 2016).

Appellants argue that the Bankruptcy Court "made no express finding that it had jurisdiction to enter the [Insurance Entity] Injunction" – an issue they never challenged – and that Appellees' arguments fail to satisfy the two elements of the *Pacor* test. (*See* D.I. 41 at 14-15). The Court disagrees. An essential and central purpose of the Plan was to address product-related tort claims and facilitate settlements of the Insurance Rights assigned to the Trust to allow for prompt payment to creditors. Without the Insurance Entity Injunction, the Trust could not maximize the settlement value of the Insurance Policies because the Trust would no longer be able to ensure complete peace to Settling Insurers. Put differently, if an insurer cannot receive protection from Contribution Claims, it will have little incentive to settle because it ultimately could face the same liability as if it had litigated the coverage case to judgment. The Insurance Entity Injunction facilitates the Trust's pursuit and settlement of Insurance Rights for the benefit of creditors. It is axiomatic that this disposition of the Insurance Rights would "alter the [Trust's] rights, liabilities, options, or freedom of action . . . and . . . impact[] upon the handling and administration of the bankrupt estate," providing for related-to jurisdiction here. *See Resorts*, 372 F.3d at 164. Indeed, "Congress intended to grant bankruptcy courts comprehensive jurisdiction so that they could deal efficiently and expeditiously with matters connected with the bankruptcy estate." *Id.* at 163-64 (citation omitted). The Trust's consensual assumption of Contribution Claim liabilities from its Settling Insurers is so connected.

Appellants cite two out of circuit cases in support of their argument, but neither is applicable. (D.I. 25 at 20 (citing *In re Zale Corp.*, 62 F.3d 746 (5th Cir. 1995) and *In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008) *rev'd and remanded sub nom. Travelers Indem. Co. v. Bailey,* 557 U.S. 137 (2009); *Travelers Indem. Co. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.),* 600 F.3d 135, 151-52 (2d Cir. 2010))). In *Johns-Manville*, the Second Circuit held that the bankruptcy court lacked jurisdiction to enjoin third-party victims' from suing a debtor's insurance company for the insurers' own independent actions that gave rise to their asbestos-related injuries. *Id.* at 58. The

Second Circuit affirmatively distinguished its holding from instances, as here, where "third parties seek to collect out of the proceeds of [the debtors'] insurance policies" or where such third-party claims "are inseparable from [the debtor's] own insurance coverage," approving cases finding bankruptcy court jurisdiction to enjoin such claims. *Johns-Manville*, 517 F.3d at 63. Likewise, in *Zale*, the Fifth Circuit distinguished cases where the asset in question is property of the estate and the dispute might have effect on the estate. *In re Zale Corp.*, 62 F.3d at 753.

### 3. **The Insurance Entity Injunction Is Constitutional**

Appellants argue that the Bankruptcy Court separately lacks constitutional authority to enter this injunction. (D.I. 25 at 21-25). Appellants argue that, under the Supreme Court's holding in *Stern*, the Bankruptcy Court lacks constitutional authority to enter any final order regarding the contribution claims but rather is compelled to submit proposed findings of fact and conclusions of law to this Court for final determination. (*Id.* (citing *Stern v. Marshall*, 564 U.S. 462 (2011))). The Third Circuit has explained that *Stern* permits a bankruptcy court to "constitutionally resolve [even] third-party claims . . . during the plan confirmation process" so long as the court has "related-to jurisdiction" over those claims. *BSA*, 137 F.4th at 148 (citing *Stern*). As a result, a bankruptcy court need not submit "proposed findings of fact and conclusions of law to the District Court for final determination" and can instead use the confirmation order to "finally determine[] third-party claims" over which it has related-to jurisdiction. *Id.* As explained, the Bankruptcy Court has subject matter jurisdiction to enter the Insurance Entity Injunction and therefore plainly exercised at least "related to" jurisdiction over the Contribution Claims as part of the Plan confirmation process. Therefore, under *BSA*, the Bankruptcy Court was neither constitutionally nor statutorily required to merely submit proposed findings of fact and conclusions of law to this Court and could instead "finally determine [the Contribution Claims] over which [it had] related-to jurisdiction during the plan confirmation process." *Id.*

**B. Appellants' Challenge to the Plan Voting Process Does Not Warrant Relief**

**1. Allowing Talc Claims on a Temporary Basis for Voting Purposes is Contemplated by the Applicable Rules**

Section 1126(a) provides that only "the holder of a claim or interest allowed under section 502 of this title may accept or reject a plan." 11 U.S.C. § 1126(a). Section 502(a) provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed." 11 U.S.C. § 502(a). Bankruptcy Rule 3003(c)(2) requires a creditor whose claim is scheduled as "disputed, contingent, or unliquidated" to file a proof of claim, and that "[a] creditor who fails to do so will not be treated as a creditor for that claim for voting." Fed. R. Bankr. P. 3003(c)(2). A proof of claim must contain sworn facts sufficient to support a legal liability of the debtor to the claimant and must substantially conform to Official Form 410, which requires the claimant to declare under penalty of perjury that the information is true and correct and to attach supporting documents. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).

As noted, Appellants objected to the temporary allowance of the Talc Claims for voting purposes, which the Bankruptcy Court overruled. *In re AIO US, Inc.*, 672 B.R. at 277-78 ("The judgment that proofs of claim are unnecessary in a mass tort case in which claims allowance will be handled on a post-confirmation basis is common in mass tort bankruptcy cases") citing *In re Quigley Co.*, 346 B.R. 647, 651 (Bankr. S.D.N.Y. 2006). The Bankruptcy Court determined that the ballots "provide the principal protections that would otherwise be afforded by the filing of proofs of claim" and that the Appellants "have not identified any substantive protection that would be afforded by requiring a proof of claim." *Id.* at 278. The Bankruptcy thus authorized the Debtors to allow Talc Claims temporarily for voting purposes under Bankruptcy Rule 3018(a). (A0892-93 (¶ 7.c)).

Rule 3018 provides that "[e]ven if an objection to a claim or interest has been filed, the court may, after notice and hearing, temporarily allow a claim or interest in an amount that the court

considers proper for voting to accept or reject a plan." Fed. R. Bankr. P. 3018(a)(4). Appellants argue that "Rule 3018(a) addresses circumstances where there has been an 'objection to a claim' and assumes there is a filed proof of claim already deemed allowed under Section 502(a), or an objection has been filed" and "the rule is not intended to authorize the temporary allowance of a claim when there is no filed proof of claim." (D.I. 25 at 26). This Court agrees with Appellees (D.I. 39 at 31) that the introductory words "*even if* an objection . . . has been filed" indicate that it does not matter whether there is an objection or not; a court has the authority to temporarily allow claims of the type temporarily allowed here. Fed. R. Bankr. P. 3018(a) (emphasis added). The plain language of Bankruptcy Rule 3018(a)(4) states that the Bankruptcy Court may temporarily allow claims for purposes of voting *even if* there is an objection, not *only* when there is an objection.

Appellants counter that this reading of Bankruptcy Rule 3018(a) is nevertheless wrong because it renders superfluous Bankruptcy Rule 3003(c)(2) – which provides, in part, that a creditor who fails to file a proof of claim will "not be treated as a creditor for that claim for voting." *Id.* This argument does not withstand the weight of Appellant's challenge. Looking to the full text of Rule 3003, subsection (c) applies when the creditor has not filed a proof of claim by the applicable bar date. Fed. R. Bankr. P. 3003(c)(2)-(3) (providing consequences for creditors who do not file a claim where the court has "set a time to file a proof of claim"). Here, no bar date had been set for the Talc Claims.

Appellants further argue that the language of section 1126 of the Bankruptcy Code excludes unfiled claims from voting notwithstanding the temporary allowance provision of Bankruptcy Rule 3018. (*See* D.I. 25 at 27). But that section *supports* the temporary allowance of unfiled claims for voting purposes – it provides that "[t]he holder of a claim or interest allowed under § 502 of this title may accept or reject a plan." Appellants selectively read the provision as applying *exclusively* to § 502(a) – which allows claims for which a proof of claim has been filed – and ignore § 502(c).

But § 1126 refers to the entirety of § 502, and section 502(c) provides that a court may "for purpose of allowance under this section [502]" estimate "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c). Section 502(c) does not require that a proof of claim be filed before such a claim may be estimated and allowed. Accordingly, courts have read Bankruptcy Rule 3018 in tandem with § 502(c) as providing authority to temporarily allow claims for voting purposes in mass tort cases where doing otherwise would delay administration of the case – notwithstanding whether a proof of claim has been filed. *See, e.g.*, *In re Lloyd E. Mitchell, Inc.*, 373 B.R. 416, 423 (Bankr. D. Md. 2007) ("The statutory predicate for Rule 3018(a) is § 502(c) of the Code, which allows for the estimation of any contingent or unliquidated claim . . ."). This practice of temporary allowance for voting "is within this Court's discretion under § 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a) and is regularly employed in mass tort cases with a large number of unliquidated claims." *Id.* In sum, the Court disagrees with Appellants' attempt to read into Bankruptcy Rule 3018 a requirement that a claim must be filed to vote on a plan.

**2. <u>The Plan Voting Process Provided the Required Procedural Protections</u>**

As the Bankruptcy Court found, Appellants failed to "identif[y] any substantive protection that would be afforded by requiring a proof of claim that is absent under the debtors' solicitation procedures, as proposed." *In re AIO US, Inc.*, 672 B.R. at 278. The Bankruptcy Court found that of "the ballots, in light of the changes that have been made in response to other objections, provide the principal protections that would otherwise be afforded by the filing of proofs of claim" and Appellant had pointed to no insufficiency beyond making the technical point that the Talc Claimants (or their agents) would provide this information by executing a document called a 'ballot' rather than one called a 'proof of claim.'" *Id.*

Appellants argue on appeal that "[a] ballot and a proof of claim serve different functions", as a proof of claim "ensure[s] that a debt is legitimate" by requiring claimants to attest to the veracity of their claim under penalty of perjury, and a lawyer cannot possibly attest to such facts on behalf of their client by submitting a ballot. (D.I. 39 at 28). This argument ignores the fact that even a proof of claim can be signed by "a creditor's agent," and thus there is nothing in federal bankruptcy procedure to suggest that proofs of claim are not, or should not be, filed by a claimant's attorney – quite the opposite. Fed. R. Bankr. P. 3001(b); *see also* Official Form 410, Part 3 (contemplating that the creditor's attorney or agent may sign the form).

Moreover, Appellants' concerns were addressed by the ballots. Item 5 of the ballot for Talc Claims required that the signing party, attorney or otherwise, certify, "under penalty of perjury, that . . . each claimant identified on the exhibit attached hereto has a Talc Claim (as defined in the Plan) against the Debtors." (A1002; *see also* A1017-18 (materially similar requirement for unrepresented Talc Claimants). Attorneys voting on behalf of their clients had to further certify their authority to vote their clients' claims. (A1002). Thus, whether a ballot was submitted by the claimant or their attorney, the same protections were in place to prevent fraudulent claims.

Appellants identify nothing else about the ballots that would have been better addressed by a formal proof of claim. Indeed, given the limited information in the Official Form 410 for Proofs of Claim which might be relevant for tort claimants (and which, in any event, is a guideline form and not strictly necessary),[8] this is unsurprising. A proof of claim is, by design, a simple thing. Courts in this Circuit have distilled the essential requirements of a proof of claim to the following: the claim must (1) be in writing, (2) contain a demand by the creditor on the estate, (3) express an intent to hold the debtor liable, (4) be filed with the bankruptcy court and (5) be equitably considered

[8] "A proof of claim is a written statement of a creditor's claim. It must substantially conform to Form 410." Fed. R. Bankr. P. 3001(a).

a proof of claim. *In re Am. Classic Voyages Co.*, 405 F.3d 127, 130-31 (3d Cir. 2005). Here, the ballot satisfied each of these requirements. Appellants have not identified any harm caused by the fact that temporarily allowed claimants could vote on the plan, and the Bankruptcy Court properly found that Appellants have suffered, at most, only harmless error. *In re AIO US, Inc.*, 2025 WL 3036740, at *5 (citing Bankruptcy Rule 9005).[9]

### 3. Even Assuming Appellants Were Correct, the Voting Process Would Yield the Same Results and Would Be Harmless Error

But even assuming Appellants are correct, the voting process would yield the same results and the defect Appellants have asserted would be harmless error, as the Talc Claimants' vote was immaterial to the outcome of the plan. Because the outcome would be the same regardless of how the issue on appeal is decided, any possible harm "would not justify disturbing the plan" but would instead be "harmless error." *In re Coastal Broad. Sys., Inc.*, 2013 WL 3285936, at *4 (D.N.J. June 28, 2013), *aff'd*, 570 F. App'x 188 (3d Cir. 2014). "The harmless error rule has been invoked in the bankruptcy context where procedural irregularities, including alleged errors in voting procedures, would not have had an effect on the outcome of the case." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 647 (2d Cir. 1988). Here, § 3.4 of the Plan states:

> Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest, as applicable, that is Allowed in an amount greater than zero for voting purposes or otherwise included to determine acceptance of the Plan, shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies sections 1129(a)(8) and 1129(a)(10) of the Bankruptcy Code with respect to such Class.

[9] "When appropriate, the court may order the correction of any error or defect--or the cure of any omission--that does not affect a substantial right." Fed. R. Bankr. P. 9005.

(A0060). Thus, even if Appellants were to succeed in establishing on appeal that Talc Claimants who did not file proofs of claim were ineligible to vote, it would not alter the outcome of the vote approving the Plan. As 100% of Talc Claims voted in favor of the Plan, so long as any Talc Claimant filed a proof of claim, then the class of Talc Claims would still have voted unanimously in support of the Plan. On the other hand, if no Talc Claimant filed a proof of claim, then, under Appellants' argument, no Talc Claimant would have been eligible to vote. And under the Solicitation Procedures Order, that scenario would have rendered the Talc Claim class vacant and, thus, deemed eliminated for voting purposes.[10] In the latter case, there would still be an impaired class that voted to approve the Plan, namely, Class 3. (*See* A0060 (Plan § 3.3)). The Plan was accepted by 61 (89.71%) holders of Class 3 Claims in the amount of $8,143,287.51 (96.93%) and rejected by 7 (10.29%) holders of Class 3 Claims in the amount of $258,000.00 (3.07%). (*See* Bankr. D.I. 1221). Consequently, the Plan would still meet the required minimum threshold for confirmation. *See* 11 U.S.C. §§ 1126, 1129(a)(8), (a)(10). Thus, even if Appellants were correct that Talc Claimants had to file proofs of claim to vote, it would not have altered the vote in favor of the Plan. Accordingly, any effect of this purported error was harmless and insufficient to "justify disturbing the plan." *In re Coastal Broad. Sys.*, 2013 WL 3285936, at *4.

## IV. CONCLUSION

For the reasons set forth herein, the Confirmation Order will be affirmed. Accordingly, the Court need not consider the parties' arguments regarding equitable mootness, and the Motion to Stay will be denied as moot. An appropriate order will be entered.

---

10 Moreover, the Solicitation Procedures Order entered by the Bankruptcy Court states that "[a]ny Class that contains Claims entitled to vote but for which no valid votes are returned shall be deemed to have accepted the Proposed Plan." (A0914 ¶ 44). Accordingly, even if Appellants establish that Talc Claimants' votes were not valid or Allowed, then, under the Solicitation Order, the class of Talc Claims would be deemed to *accept* the Plan in any event.